IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BOMANI JAHI BROADNAX,

    Plaintiff,

v.

DAVID LIVINGSTON, Contra Costa County Sheriff,

    Defendant.

No. C 13-05319 WHA

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner, a state prisoner represented by counsel, moves for collateral relief under Section 2254. For the reasons stated below, the petition is **DENIED**.

## STATEMENT

At the time he filed his petition, Bomani Broadnax was incarcerated at West County Detention Facility in Contra Costa County. Pursuant to Section 2254 of the United States Code, he moves for writ of habeas corpus challenging a California state court proceeding. Petitioner is represented by counsel. Double jeopardy is the issue.

On April 2, 2008, the Contra Costa County District Attorney filed a juvenile wardship petition against petitioner pursuant to Welfare and Institutions Code Section 602(a). In count one, petitioner was charged with attempted murder, in violation of California Penal Code Sections 187 and 664. With respect to count one, the wardship petition also alleged special enhancements of intentionally discharging a firearm (California Penal Code Section 12022.53) and personally using a handgun (California Penal Code Section 12022.5(a)(1)). Count two charged petitioner with assault with a firearm, in violation of California Penal Code Section 245(a)(2). Count two also

alleged sentencing enhancements of personally using a handgun and personally inflicting great bodily injury (California Penal Code Section 12022.7(a)).

On appeal from the conviction, the unpublished opinion of the California Court of Appeal stated (Resp. Exh. A at 2–3):

> On January 22, 2008, police responded to shots fired call near 17th Street in Richmond. At the scene, officers found a vehicle crashed into a house. Officers noticed the rear window of the vehicle was shattered and inside found Mable Stallworth sitting in the front driver seat, disoriented and bleeding from the back side of her head. Before she was transported to hospital, Stallworth was able to tell police that she was traveling west on Ohio Avenue, heard a loud bang, lost consciousness momentarily and woke when her vehicle crashed. Stallworth's condition was listed as serious with bone fragments to her brain. A neighbor informed police he saw a green Buick racing away from the area where the shots were fired.
>
> On March 27, 2008, Richmond Police received information on the shooting in an interview with Alex Joseph. Joseph told police that on the day of the shooting, he was driving his green Buick when he saw a blue van with tinted windows. Joseph knew the van belonged to a person he was feuding with and noticed the van had begun to follow his vehicle. After the van pulled behind Joseph's vehicle, the passenger in the right front seat of the van leaned out of the window and began shooting at him. Joseph stated that the first two shots missed his vehicle and hit the car in front (Ms. Stallworth's vehicle), and the second two shots hit the Buick. After the shooting, the blue van fled the scene. Joseph told police that he recognized the shooter as Bo Mony. In a second interview on March 27, 2008, Joseph identified [petitioner] from a photographic lineup.
>
> On March 30, 2008, police responded to a shots fired call in the area of 18th Street and Bissell Avenue in Richmond. Citizens informed officers that a black male, later identified as [petitioner], was involved in the shooting and that he ran into a residence on Chanslor Avenue carrying a long gun. When officers went into the residence on Chanslor Avenue, the owner, [petitioner's] grandfather, told police [petitioner] ran into the house and then immediately left. [Petitioner's] grandfather consented to a search of the premises. Police found ammunition in [petitioner's] room and a SKS type 56 rifle in his brother's bedroom.
>
> On March 31, 2008, [petitioner] was stopped for driving without a license and subsequently placed under arrest for attempted murder. When questioned by police, [petitioner] denied any involvement in the drive by shooting on January 22, 2008. Later, [petitioner] admitted he was in the van that chased the green Buick but said that a person named Michael was the shooter.

1    Petitioner pled no contest to assaulting Joseph and Stallworth with a firearm and personally
2 inflicting great bodily harm on Stallworth (Resp. Exh. A at 4). The state trial court found that
3 petitioner knowingly and voluntarily pled no contest, reviewed the evidence, and committed
4 petitioner to the California Division of Juvenile Justice for a term of five years (Resp. Exh. A at 7).

5    On January 5, 2011, the Division of Juvenile Justice placed petitioner on juvenile parole
6 under the supervision of his father. Subsequently, however, petitioner picked up new charges for
7 carrying a loaded firearm near the funeral of a rival gang member in Contra Costa County Juvenile
8 Court, all pursuant to a petition under California Welfare and Institutions Code Section 777. The
9 juvenile court granted the prosecutor's motion to dismiss the Section 777 petition without
10 prejudice. The prosecutor then brought an amended wardship petition with the same court under
11 Section 602, which was dismissed without prejudice. *Two months later, the prosecutor orally*
12 *moved on the record to increase the original 2009 five-year commitment based on new*
13 *circumstances (loaded firearm near the funeral of a rival gang) pursuant to Sections 731(c) and*
14 *779* (Resp. Exh. C). Section 779 authorizes a court committing a ward to the California Youth
15 Authority to thereafter change, modify, or set aside the order of commitment. Under Section
16 731(c), this commitment cannot be increased to an amount of time greater than the maximum
17 period of imprisonment that could be imposed on an adult convicted of the same offense.

18    After considering the arguments from both sides, the juvenile court modified the original
19 commitment to add an additional five years to the commitment for a total of ten years, still less
20 than the 17-year maximum allowed for the original offense.

21    Now comes the double jeopardy problem. On August 16, 2012, petitioner was indicted and
22 charged as an adult with violating California Penal Code Sections 182(a)(1)/245 (conspiracy to
23 discharge a firearm), 182(a)(1)/245(b) (conspiracy to commit an assault with a semiautomatic
24 firearm), 2800.4 (evading a peace officer), and 186.22(a) (criminal street gang terrorism). The
25 indictment also alleged that petitioner committed the crimes to benefit a criminal street gang. It is
26 uncontested that these charges stem from the same set of facts as the modification of petitioner's
27 2008 commitment under Welfare and Institutions Code Section 779.

28

3

On June 13, 2013, petitioner moved the Contra Costa County Superior Court to dismiss the criminal charges on double jeopardy grounds. That motion was denied (Resp. Exh. C). The California Court of Appeal denied the writ of mandate/prohibition and request for stay that raised double jeopardy grounds for relief (Resp. Exh. D). The California Supreme Court denied the petition for review (Resp. Exh. H).

Now, petitioner moves for collateral relief under Section 2254. In addition, petitioner moves for an evidentiary hearing. In subsequent briefing, petitioner stated that he was convicted of the offense in Contra Costa County Superior Court and has been released on parole.

**ANALYSIS**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. 2254(d).

The Antiterrorism and Effective Death Penalty Act, which both parties agree applies to our case, imposes a highly deferential standard for evaluating state court decisions. *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). The state court decision to which Section 2254 applies is the last reasoned state court decision, which in our case is Superior Court Judge John Lattner's oral decision on the record. *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005).

Under the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 413. A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003).

4

### 1.    SUBJECT-MATTER JURISDICTION.

Section 2254(a) states that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." While it is uncontested that petitioner was in custody when he filed his petition, there is a subject-matter jurisdiction issue as to whether the state court's denial of petitioner's motion to dismiss the indictment, based on double jeopardy grounds, constitutes a state court judgement under Section 2254.

Our court of appeals addressed this issue in *Mannes v. Gillespie*, 967 F.2d 1310 (9th Cir. 1992). There, a superior court jury convicted the defendant of driving under the influence, deadlocked on murder charges, and the judge declared a mistrial. Two weeks later, the judge dismissed the murder charges on his own motion. The district attorney then re-filed the murder charges in municipal court. The defendant challenged the charges on double jeopardy grounds, exhausted her state remedies, and then filed a federal habeas petition. In considering whether there was subject-matter jurisdiction, our court of appeals stated: "Because full vindication of the right necessarily requires intervention before trial, federal courts will entertain pre-trial habeas petitions that raise a colorable claim of double jeopardy." *Id*. at 1312. The decision went on to state that because "Mannes exhausted state remedies on her double jeopardy claim, the district court has jurisdiction to hear her petition under 28 U.S.C. 2254." *Ibid*.

Here, there is no dispute that petitioner has exhausted his state remedies. After doing so, petitioner was convicted on the adult charges. Under *Mannes*, because he is challenging the indictment on double jeopardy grounds, this order finds there is subject-matter jurisdiction in our case.

Respondent argues that there is no subject-matter jurisdiction because petitioner had not yet been convicted when he filed the instant petition. In support of this contention, petitioner relies on *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) and *Maleng v. Cook*, 490 U.S. 488, 490–494 (1989) (per curiam). These decisions are inapplicable to our case, as neither discussed double jeopardy. *Carafas* held that the habeas petition at issue was moot because the petitioner

had already been unconditionally released from his prison sentence. *Maleng* similarly held that the petition at issue was moot because petitioner had already been released. Neither decision addressed whether a person charged with a crime can challenge the indictment on double jeopardy grounds, through a Section 2254 petition, once he has exhausted his state remedies.

**2.    DOUBLE JEOPARDY.**

The central issue in our case is whether the state may prosecute a person as an adult for actions that were previously used to increase his custody time on a prior juvenile commitment pursuant to Welfare and Institutions Code Sections 731(c) and 779, without running afoul of the Double Jeopardy Clause. In our case, in denying petitioner's motion to dismiss on double jeopardy grounds, the state trial court found (Resp. Exh. C at 15–18):

> THE COURT: . . . [J]eopardy for the March 9th, 2011, offense never attached to the juvenile docket. To the extent that jeopardy could have theoretically attached under *Marco A.* due to the section 777 notice, based on the March 9, 2011, events, this notice was dismissed on March the 14th, 2011. The defendant was never placed on trial for the section 777 notice. No witnesses were called.
>
> While the supplemental section 602 petition based on the March 9th, 2011, events would have placed the defendant in jeopardy for the March 9, 2011, events, if the petition had proceeded to adjudication and the witness or witnesses were sworn, this did not happen. Instead the supplemental section 602 petition was dismissed on October the 17th, 2011.
>
> At the time of the December 5th, 2011, proceedings, there was no accusatory pleading before the juvenile code—court, which would have allowed the juvenile court to try the defendant for the March 9th, 2011, offenses. No witnesses were sworn. The sanctions the defendant faced at that time did not include either an adult criminal conviction or a juvenile adjudication for the March 9, 2011, offenses. At no time during the juvenile proceedings did jeopardy ever attach for the March 9, 2011, offenses.
>
> The law recognizes that when a criminal activity that the defendant is not currently being prosecuted for is considered by a judge at a sentencing proceeding, the defendant can subsequently be prosecuted for that criminal conduct without violating the bar on double jeopardy. See, for example, *Witte v. United States*, 1995, Supreme Court case at 515 U.S. 389.
>
> With jeopardy for the March 9th, 2011, offenses having never attached in the juvenile court proceedings, the defendant was

> never informed of jeopardy, and the defendant's motion to dismiss
> on double-jeopardy grounds is, therefore, denied.

In *Witte v. United States*, which the state trial court relied on, the Supreme Court held that "where the legislature has authorized such a particular punishment range for a given crime, the resulting sentence within that range constitutes punishment only for the offense of conviction for purposes of the double jeopardy inquiry. Accordingly, the instant prosecution for the cocaine offenses is not barred by the Double Jeopardy Clause as a second attempt to punish petitioner for the same crime." *Witte v. United States,* 515 U.S. 389, 403–04 (1995). Essentially, *Witte* held that the Double Jeopardy Clause is not violated when uncharged relevant conduct is considered at sentencing in one proceeding, and then after that sentence is handed down, the relevant conduct that increased a sentence is later charged as a separate crime.

Here, the prosecutors moved to modify petitioner's commitment under Sections 731(c) and 779 and the juvenile court added five additional years to petitioner's 2008 commitment (Resp. Exh. C). The resulting modified commitment was ten years. This is similar to *Witte*, in that relevant conduct was used to increase a defendant's sentence in a prior crime, and then later became the basis of a new charge. While the facts of our case do not align perfectly with *Witte*, the state trial court was not objectively unreasonable in its application of *Witte* to the instant action.

In response, petitioner relies on *Breed v. Jones*, 421 U.S. 519, 537–38 (1975). There, the Supreme Court held that a juvenile is put in jeopardy within the meaning of the Double Jeopardy Clause if he is subjected to a proceeding that may result in an adjudication that he has committed criminal acts, and that may put his liberty and reputation at risk. In *Breed*, the defendant was adjudicated in a juvenile proceeding and then transferred to adult court to be charged for a new crime based on the same underlying conduct. The state court, however, found that in the instant case, there was no adjudication in juvenile court. Rather, the juvenile court merely considered the conduct in modifying petitioner's sentence, as it was permitted to do under Section 779.

Furthermore, petitioner argues that the state trial court erred in finding that the juvenile court did not adjudicate the issue of petitioner's alleged offenses. Petitioner contends that the

7

following colloquy, increasing petitioner's original sentence, qualifies as an adjudication for double jeopardy purposes (Trav. Exh. C 2(G), 9:16–10:6):

> Court: Well, it doesn't look good.
>
> Prosecutor: And so I want to make sure.
>
> Court: I mean he's out there with a loaded gun after he's just been released. It doesn't look good. He's up to no good. There is no reason. He's not hunting, I suppose, any animals with a loaded pistol. So what are you asking or on the modifying on the commitment on the seven – and I have to read it.
>
> Prosecutor: I would ask the Court to extend his maximum time pursuant to 731(c) to seven years — I'm sorry — to add an additional seven years.
>
> Court: And Mr. Gendreau.
>
> Defense: We're submitting, your Honor, on my earlier statements.
>
> Court: Okay. Then pursuant to 731(c) the 779 I'll add five.
>
> Prosecutor: Okay.
>
> Court: Five years are added.

This order finds that during this colloquy, the prosecution requested that petitioner's juvenile sentence be enlarged by seven years based on the conduct at issue. Petitioner's lawyer did not challenge the accuracy of the prosecutor's recitation and "submitted" without further argument. The juvenile court judge then added five years to petitioner's juvenile sentence. While petitioner's lawyer did not contest the judge's ruling, this order finds that it was an adjudication based upon the implicit concession regarding petitioner's conduct by his lawyer.

Nevertheless, under the Supreme Court's holding in *Witte*, the state court's ruling on the double jeopardy issue was not an objectively unreasonable interpretation of the law, as troubling as it seems to be. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If

this standard is difficult to meet, that is because it was meant to be." *Ibid*. The state court's ruling simply does not meet this high standard.

This order also points out that it is common in our own federal practice for new criminal conduct to not only be the subject of a Form 12 proceeding, but also the subject of a new indictment (each of which can add time consecutively). In our federal practice, defense lawyers are sensitive to this problem and normally try to roll in both dispositions in a single agreement. That did not happen in this case. The colloquy in question left the prosecutor free to seek a new indictment based on the same conduct.

## CONCLUSION

For the reasons stated above, the petition is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 10, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE